**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| YASMEEN AJMERI, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-02394 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BANK OF AMERICA HEALTH & | : | |
| WELFARE PLAN & AETNA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

PISANO, District Judge.

   This case involves a claim for short-term disability benefits[1] under the Employee

Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a)(1)(B) ("ERISA),

brought by Plaintiff Yasmeen Ajmeri ("Plaintiff" or "Ajmeri") against Defendants Bank of

America Corporation ("BOA") and Aetna Life Insurance Company ("Aetna" and collectively

with BOA, "Defendants").[2]  Before this Court are two motions for summary judgment: one filed

by Plaintiff and one filed by Defendants.  The Court decides these matters without oral argument

pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, the Court will deny Plaintiff's

motion for summary judgment and grant Defendants' motion for summary judgment.

---

[1] Although Plaintiff's Complaint alleges that she is entitled to long-term disability benefits, there
is no evidence that she ever applied for such benefits.

[2] Plaintiff pled Defendants in the Complaint as "Bank of America Health and Welfare Plan" and
"Aetna."  The Court refers herein to the entities' names as set forth in Defendants' papers.

### I.   Background

The Court finds that the following facts are supported by the evidence of record and are undisputed.[3]

A. Plaintiff's Employment with Bank of America

Plaintiff has been employed by BOA since December 2005.  At the time she filed for disability benefits, Plaintiff held the position of Senior Teller and her job functions included: receiving and paying out money; cashing and depositing checks; keeping records of customers' transactions; recording transactions into a computer and issuing receipts; counting incoming and outgoing cash and balancing a cash drawer; and performing other related services, such as issuing travelers checks and money orders.

B. The Plan

BOA sponsored the Bank of America Group Benefits Plan (the "BOA Plan"), which included a short-term disability plan (the "STD Plan").  BOA funded the STD Plan and made benefit payments through its regular payroll process.  The STD Plan contained a one-week unpaid elimination period.  Thereafter, the STD Plan paid 100% of a Claimant's base pay for up to eight (8) weeks and 70% of a claimant's base pay for up to an additional seventeen (17) weeks when combined with any other available disability benefits.

The STD Plan defined "disabled" as "your inability to perform your essential occupation functions, including working your regularly scheduled hours, for more than seven consecutive calendar days because of . . . illness."  The STD Plan also contained additional eligibility requirements, including a requirement that employees receive appropriate treatment from a

---

[3] These facts are derived from Plaintiff's Statement of Facts, Defendants' Statement of Undisputed Material Facts and the exhibits attached to Defendants' Motion, as well as the other filings of record in this case.

health care provider on a continuing basis while on STD leave and that employees be at work or

on paid parental leave as of the date of disability to be eligible for benefits.  The STD Plan also

stated that STD benefits will not be paid if a claimant fails to provide satisfactory objective

medical evidence of disability or continuing disability.  It further provided that benefits will end

when a participant is no longer considered disabled; is capable of performing the essential

functions of her job; or fails to provide satisfactory medical evidence of disability.

BOA contracted with Aetna to serve as the Claims Administrator for the BOA Plan and

provide certain claim services for several component plans, including the STD Plan.  BOA,

through its plan administrator, delegated to Aetna the discretionary authority to:  determine a

claimant's eligibility for benefits; construe the terms of the STD Plan; resolve questions relating

to claims under the STD Plan; and review denied claims.  As an employee of BOA, Plaintiff was

a participant in the STD Plan and eligible to receive benefits, provided she met the plan's

eligibility requirements.

   C.  Plaintiff's Initial Claim for Benefits Under the STD Plan

On October 4, 2010, Plaintiff's physician, Dr. Lauren Maza, diagnosed her with

depression and anemia.  Plaintiff submitted a claim for short-term disability benefits ("STD

benefits") to Aetna on that same date.  Her submission included a statement from Dr. Maza

regarding her diagnosis and a recommendation from Dr. Maza that Plaintiff should be out of

work for two weeks.  Several weeks later, on October 18, 2010, Aetna[4] determined that the

information provided to date did not support a finding of functional impairment because Plaintiff

could still perform her role as a Senior Teller.  In particular, Aetna found that Plaintiff was still

capable of communicating effectively with others, making decisions and solving problems, and

_____

[4] This determination was made by Aetna's Behavioral Health Unit ("BHU").  For purposes of
this opinion, the Court will refer to BHU and other internal units as "Aetna."

using appropriate judgment.  Aetna decided to suspend Plaintiff's claim in order to provide

Plaintiff the opportunity to submit additional records to support her claim for benefits.

Plaintiff failed to provide any additional information or respond to Aetna's attempts to

contact Plaintiff.  Therefore, on October 29, 2010, Aetna sent Plaintiff a letter stating that the

information she had submitted did not support functional impairment from a mental or physical

condition.  Specifically, Aetna stated that there was a lack of clinical findings, such as observed

behavioral and cognitive impairments, that would preclude Plaintiff from functioning in her role

as a bank teller.  Aetna provided Plaintiff with information about the type of clinical data

necessary to substantiate her claim, such as "observed cognitive, emotional, behavioral, and risk

factors" and informed Plaintiff of her right to submit additional information in support of her

claim.  Plaintiff promptly filed an appeal of Aetna's denial of benefits.

After Aetna issued its decision, Dr. Maza submitted a letter to Aetna, which contained

additional details regarding Plaintiff's diagnosis.  Among other things, Dr. Maza explained that

Plaintiff "has severe depression and anxiety; concentration and focus are impaired" and that

Plaintiff suffers from "sweats, tachycardia . . . under stressful circumstances."  She also indicated

that Plaintiff's depression and anxiety were related to work and that Plaintiff suffered from stress

and nightmares.  She stated that Plaintiff could return to work in approximately two months (or

possibly earlier, if she was assigned to another supervisor) and indicated that she was not seeing

a therapist.[5]  Aetna determined that this additional information did not support a finding of

functional impairment since it did not preclude Plaintiff from performing her job duties as a bank

teller.  Accordingly, Aetna proceeded with a review of her appeal.

---

[5] A review of the record indicates that Dr. Maza submitted additional information to Aetna over
the course of Plaintiff's claim for benefits and appeal.  For example, she indicated that Plaintiff
displayed vegetative signs, decreased appetite and loss of sleep, and crying.  However, her
diagnosis that Plaintiff suffered from depression and anemia remained consistent.

D.  Plaintiff's Medical History Following her Initial Claim for Benefits

In late October 2010, Plaintiff visited a pain management physician, Dr. Baher Yanni, regarding pain in her neck, back, head and shoulders.  Dr. Yanni diagnosed her with various ailments, including acute cholecystitis, lumbago, and lumbar and thoracic sprain and strain.  Dr. Yanni did not prescribe any medication or treatment, but he gave her a referral for colorectal surgery to address her gallstone problems.  Plaintiff also visited an orthopedic surgeon, Dr. Nadir Kasim, several times in October and November 2010 regarding pain in her knees.  Plaintiff reported having the pain on and off "for months" and having "difficulties standing for long periods of time."  X-rays showed arthritis in both of Plaintiff's knees.  Over the course of her visits with Dr. Kasim, Plaintiff received a series of Synvisc injections to her knees.

At some point, Plaintiff also received an MRI, which showed a herniated disc in the spine, a sprained ligament and torn meniscus in both the left and right knee and various other issues with her right knee.  During a follow-up visit with Dr. Yanni in February 2011, Dr. Yanni again diagnosed Plaintiff with lumbago, lumbar and thoracic sprain and strain and unspecified enthesophy of the knee.  He did not prescribe any treatment, but referred her to another doctor for an evaluation of her Achilles pain.

In November 2010, Plaintiff visited a psychiatrist, Dr. Esha Khoshnu, several times.  During these sessions, Plaintiff complained of anxiety, pain in her stomach, and an inability to eat, sleep, and drive, since being transferred to a new BOA branch.  She also mentioned issues with her "new boss" and concerns about harassment because she wore a scarf on her head.  Dr. Khoshnu diagnosed Plaintiff with "adjustment disorder, PTSD" and started Plaintiff on various medications.  He recommended that she remain out of work.  At the final session with Dr. Khoshnu in late November 2010, Plaintiff stated that she had decided to stop taking her

medication because she was feeling better.  There is no evidence in the record of any further

mental health treatment or therapy following these sessions.

Several months later, on January 5, 2011, Plaintiff underwent gallbladder surgery.  The

surgeon, Dr. Ragul Sadek, noted that the procedure was unremarkable and that Plaintiff tolerated

it well.  He initially recommended that Plaintiff be out of work until January 28, 2011 but later

sent a letter to Aetna informing them that Plaintiff could not return to work until February 28,

2011.  Dr. Sadek's practice then sent Aetna a note saying that Plaintiff would be able to return to

work on April 1, 2011.

E.  Plaintiff's Appeal

During this time, Plaintiff requested – and was granted – several extensions of time from

Aetna so that she could gather additional medical documentation from her doctors in support of

her appeal.  On February, 22, 2011, Plaintiff's husband confirmed that all information had been

sent to Aetna and that Aetna could continue with its review.  Aetna conducted an internal review

of Plaintiff's claim file and determined that Plaintiff's medical documentation supported

disability but only as it related to Plaintiff's gallbladder surgery from January 5, 2011 to January

14, 2011.  Aetna further determined that there was insufficient medical evidence to support a

finding of disability from a psychological/psychiatric disorder or from the orthopedic injuries.

As part of its review of the appeal, however, Aetna requested an independent medical

record review by specialists in three separate areas: psychiatry, orthopedic surgery and general

medicine.  Dr. Randy Rummler, a psychiatrist, reviewed Plaintiff's job description and medical

records and concluded that the records did not support a finding of disability because Plaintiff

did not suffer from disabling psychiatric symptoms that prevented her from performing her job.

Dr. Lawrence Blumberg, an orthopedic surgeon reviewed Plaintiff's file and concluded that,

from an orthopedic standpoint, Plaintiff was not functionally impaired because there was no

evidence that she was unable to sit, stand or ambulate for a period of time.  Finally, Dr. Armand

Katz, a general surgeon, also reviewed Plaintiff's medical records and found that Plaintiff

substantially impaired from January 5, 2011 through January 8, 2011, the several days after her

gallbladder operation.  He concluded that Plaintiff should have been able to return to work on

January 9, 2011, as the surgery was unremarkable.

Aetna forwarded a copy of Dr. Rummler's report to Dr. Maza and Dr. Khoshnu for

review and instructed both doctors to contact Aetna if they disagreed with Dr. Rummler's

conclusions, but neither doctor responded.  Similarly, Aetna forwarded a copy of Dr. Blumberg's

report to Dr. Yanni for her review and instructed her to contact Aetna if she disagreed with the

conclusions contained in the report  Aetna did not receive a response from Dr. Yanni.

By letter dated May 12, 2011, Aetna advised Plaintiff that it had completed its review of

her appeal and that the original decision to deny STD benefits effective October 4, 2010 was

upheld.  Aetna explained that the medical records did not a support a finding of disability from

an orthopedic or psychiatric/psychological standpoint.  Aetna further explained that although

there was evidence of disability for a period of time following Plaintiff's gallbladder surgery in

January 2011, Plaintiff was not eligible for STD benefits on January 5, 2011 since she was not at

work at the time.[6]  This lawsuit followed.  Both parties have now moved for summary judgment.

## II.    Standard of Review

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil

Procedure "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

must first show that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S.

---

[6] Plaintiff's last day at work was October 4, 2010, the date she initially filed for STD benefits.

317, 323 (1986).  Whether or not a fact is material is determined according to the substantive law

at issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party makes

this showing, the burden shifts to the non-moving party to present evidence that a genuine fact

issue compels a trial.  *Celotex*, 477 U.S. at 324.  The non-moving party must then offer

admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  Its opposition must rest on "facts in the record and cannot rest solely

on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Group,*

*Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

     The Court must consider all facts and their logical inferences in the light most favorable

to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d

Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but

need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If

the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a

genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple*

*BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   Legal Discussion

### A.  Plaintiff's Motion for Summary Judgment

     Under Local Rule 56.1(a), a party moving for summary judgment "shall furnish a

statement which sets forth material facts as to which there does not exist a genuine issue, in

separately numbered paragraphs citing to the affidavits and other documents submitted in

support of the motion."  L. Civ. R. 56.1(a).  A motion for summary judgment that is not

accompanied by a statement of undisputed facts "shall be dismissed."  *Id.*; *see also Owens v. Am.*

*Hardware Mut. Ins. Co., et al.*, 2012 U.S. Dist. LEXIS 182953, at *5-6 (denying plaintiff's

motion for summary judgment because plaintiff failed to provide a statement of undisputed

material facts along with his motion).

In addition, an affidavit or declaration "used to support or oppose a motion for summary

judgment must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4).  Statements in affidavits made in the absence of personal knowledge or

without factual foundation, and conclusory statements for which no basis in fact or personal

knowledge is provided, are not properly considered.  *See Reynolds v. Dept. of Army*, 439 Fed.

App'x 150, 152 (3d Cir. 2011).  Nor may a court consider hearsay statements, *see Gonzalez v.*

*Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 262 (3d Cir. 2012), or representations and

argument of counsel, *see D'Orazio v. Hartford Ins. Co.*, 459 Fed. Appx. 203, 205 (3d Cir. 2012).

While Plaintiff demonstrates some semblance of compliance to the requirements of these

rules, the Court finds that her submission is nonetheless lacking.  First, although Plaintiff

includes a statement of facts in her Memorandum of Law, the facts are not set forth in separately

numbered paragraphs, as required by Rule 56.1(a).  More importantly, Plaintiff fails to attach the

administrative record or any of the documents contained in the record to her motion, despite

repeated citations to such documents in her brief.[7]  Nor does she include any affidavits by

witnesses with personal knowledge of the facts.  In fact, her motion consists solely of the

Memorandum of Law submitted by counsel and a single exhibit (*see supra*, n.7).  This is

insufficient both procedurally and substantively and falls far short of what is necessary to prove

---

[7] The sole exception is a copy of what appears to be one of Plaintiff's pay stubs, which she
attaches to the Memorandum of Law as "Exhibit A."  Even considering the document, however,
the Court finds that the evidence is insufficient to grant summary judgment in favor of Plaintiff.

Plaintiff's case as a matter of law. Accordingly, the Court finds that Plaintiff's motion for summary judgment must be denied.

### B. Defendants' Motion for Summary Judgment

#### 1. Procedural Deficiencies in Plaintiff's Opposition Filings

Plaintiff has filed an opposition to Defendant's motion for summary judgment. Local Rule 56.1 states that "the opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Although Plaintiff includes a facts section in her opposition brief, she fails to address each paragraph of Defendants' statement of undisputed facts, as required by Rule 56.1(a). Instead, she simply repeats the facts as set forth in her own motion for summary judgment, which is also procedurally infirm, for the reasons discussed above. In addition, Plaintiff fails to put forth any admissible evidence to dispute the facts and documentary evidence submitted by Defendants. *See Egersheim v. Woods*, 2012 U.S. Dist. LEXIS 8104, at *9-10 (D.N.J. 2012) (finding that plaintiffs' opposition was insufficient to dispute defendants' statement of material facts where plaintiffs did not comply with Rule 56.1 or submit any admissible evidence in opposition). As such, Plaintiff has failed to dispute Defendants' Statement of Material Facts and the Court accepts as true all of the facts set forth in Defendants' Statement of Undisputed Material Facts and attached exhibits. As discussed below, the Court finds that Plaintiff has failed to raise any genuine issue of material fact to defeat Defendants' motion for summary judgment.

2. Plaintiff's Application for Short-Term Disability Benefits

Defendants argue that they are entitled to summary judgment as to Plaintiff's claim for

short term disability benefits because Plaintiff has not demonstrated that it was an abuse of

discretion for Aetna to deny her claim for benefits.  It is settled law that if a plan gives the

administrator to determine eligibility for benefits or to construe the terms of the plan, that

decision must be reviewed under an "abuse of discretion" or "arbitrary and capricious standard."

*Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989); *Gillis v. Hoescht Celanese*

*Corp.*, 4 F.3d 1137, 1141 (3d Cir. 1993).  Here, there is no dispute that BOA, through its plan

administrator, delegated to Aetna discretionary authority to determine a claimant's eligibility for

benefits; construe the terms of the STD Plan; resolve questions relating to claims under the plan;

and review denied claims.[8]  Accordingly, the Court will review Aetna's decision to determine if

it was arbitrary and capricious or an abuse of discretion.

Under this standard of review, a court may overturn the administrator's decision to deny

a claim only if that decision is without reason, unsupported by substantial evidence, or erroneous

as a matter of law.  *See Doroshow v. Hartford Life & Accident*, 574 F.3d 230, 234 (3d Cir.

2009); *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 44-45 (3d Cir. 1993).  The standard of

"substantial evidence" means that a reasonable mind might accept a particular evidentiary record

as "adequate to support a conclusion."  *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (citing

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Moreover, when reviewing the denial

of benefits under this standard, the court's analysis is limited to the evidence available to the

administrator at the time the decision was made.  *Abnathya*, 2 F.3d at 48 n.8.

---

[8] The Court notes that there is no conflict of interest here because Aetna merely performs
administrative services, while BOA funds the STD Plan.  *See Metro. Life Ins. Co. v. Glenn*, 554
U.S. 105,  112 (2008) (finding a conflict of interest where an employer both funds an ERISA
plan and evaluates claims for benefits).

After having reviewed the evidence in the record, the Court finds that Aetna's denial of benefits was not arbitrary and capricious or an abuse of discretion.  In particular, the STD Plan's eligibility requirements state that a claimant must provide satisfactory objective medical evidence of disability.  *See, e.g., Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439-40 (3d Cir. 1997) (finding that where plan requires plaintiff to prove he is disabled, he bears the burden of demonstrating that he meets the definition of disability in the plan).   The STD Plan further requires that a claimant be receiving appropriate care and treatment on a continuing basis and limits the amount of time a non-psychiatrist health care provider can treat a patient for behavioral health problems to 30 days.

Here, Plaintiff's initial claim for disability benefits included a statement from her primary care physician that she had been diagnosed as suffering from depression and anemia.  The physician, Dr. Maza, did not give any indication that Plaintiff was unable to perform her job functions as a Senior Teller and instead found that she was able to provide supervision, work with others, and was capable of working light duty for up to 8 hours a day.  Dr. Maza later submitted another letter, which indicated a diagnosis of depression with anxiety and a secondary diagnosis of cholelithiasis.  However, Dr. Maza did not provide any evidence that Plaintiff was clinically impaired from performing her job functions.  Rather, Dr. Maza found that Plaintiff's cognitive functioning was generally normal, with minor exceptions.  She also found that Plaintiff suffered from panic attacks, but that Plaintiff was dressed appropriately, had normal speech and was in control of her impulses.  When asked to provide additional clinical information about Plaintiff's condition, Dr. Maza stated that Plaintiff had trouble focusing, memory problems and was avoiding driving/other daily activities.  However, she did not conduct a formal mental examination and apart from a prescription for Lexapro that Plaintiff discontinued within a few

weeks, Dr. Maza did not recommend any further medication or course of treatment.  Based on

this information, a reasonable person would find that Aetna's decision to deny Plaintiff's claim

was reasonable and supported by substantial evidence.  Accordingly, Aetna was not arbitrary and

capricious in finding that Plaintiff was ineligible for STD benefits.

> 3.  Plaintiff's Appeal of the Denial of Her Claim for Benefits

The Court further finds that Aetna's decision to uphold the denial of benefits was not

arbitrary or capricious or an abuse of discretion.  As discussed above, the STD Plan requires that

a claimant must provide satisfactory objective medical evidence of disability in order to receive

benefits.  Following Aetna's initial determination that Plaintiff was not disabled, Aetna provided

Plaintiff with the opportunity to submit additional information in support of her claim.  Over the

next several months, Plaintiff submitted a variety of additional medical information from various

doctors, which largely fell into three separate categories: psychiatry; orthopedics; and general

surgery.  Although her initial claim related to mental health and behavioral problems, Aetna

considered all of the records submitted.

With respect to the mental health issues, Plaintiff submitted records from Dr. Khoshnu,

who had diagnosed her with "adjustment disorder, PTSD" and noted that Plaintiff complained of

anxiety, stomach pain and an inability to eat, sleep and drive.  Although Dr. Khoshnu

recommended that Plaintiff remain out of work, he did not provide any information to support

Plaintiff's claim that she was unable to work due to her adjustment disorder and/or PTSD.  Nor

did he offer an opinion regarding Plaintiff's ability to perform her job functions.  Following a

session with Dr. Khoshnu in late November 2010, at which Plaintiff stated that she was feeling

better, there is no evidence in the record of any further mental health treatment.  Aetna's

independent expert determined that Plaintiff was not suffering from disabling psychiatric

symptoms that interfered with her ability to perform her job, a conclusion that Plaintiffs' doctors

did not dispute.  Thus, the Court finds that a reasonable person would agree that Aetna's

determination that Plaintiff was not disabled is supported by substantial evidence.

Plaintiff also submitted records of orthopedic problems from a pain management

physician and an orthopedic surgeon.  She was diagnosed with various ailments, including acute

cholecystitis, lumbago, and lumbar and thoracic sprain and strain.  An MRI showed a herniated

disc in the spine, a sprained ligament and torn meniscus in both the left and right knee and

various other issues with Plaintiff's right knee.  In addition, X-ray revealed arthritis in the knees,

which was treated with a series of Synvisc injections.  Although Dr. Yanni recommended that

Plaintiff be out of work for several weeks due to her orthopedic problems, she did not provide

any objective medical information as to how these conditions impaired Plaintiff's ability to

perform her job as a Senior Teller.  Nor did she indicate that Plaintiff was, in fact, unable to

perform any of her job functions.  Aetna's independent expert concurred with the diagnoses, but

found that Plaintiff was not functionally impaired as a result of her orthopedic problems.[9]

Plaintiff's doctor did not respond to the expert's report, although she was given an opportunity to

do so.  Therefore, the Court finds that Aetna's conclusion that Plaintiff was not functionally

impaired is supported by substantial evidence.

Finally, with respect to her gallbladder and surgical issues, Plaintiff submitted records

from the surgeon, Dr. Sadek, who recommended that she be out of work for a number of weeks

following the gallbladder surgery.  Dr. Sadek did not provide any reason for such a long absence,

however, and instead noted that the surgery went well.  Following a review by its own

independent expert, Aetna found that Plaintiff was not disabled before the surgery but was in fact

---

[9] Aetna's expert did find that Plaintiff was functionally impaired for a period of time following her gallbladder surgery, but as discussed below, Plaintiff was not eligible for disability benefits on those dates since she was not at work at the time that she became disabled.

disabled for a period of 4 days following the surgery. However, the STD Plan requires that a

claimant be at work or on paid leave as of the date of disability to be eligible for benefits.

Because Plaintiff was not at work – or on approved leave – as of the date she underwent

gallbladder surgery, she was not eligible for STD benefits for her recovery days. The Court

concludes that a reasonable person would not find that Plaintiff was eligible for STD benefits

since she was not employed or on leave as of the date of her surgery.

Having considered all of the evidence in the record, the Court finds that Aetna was not

arbitrary and capricious in upholding its denial of benefits on Plaintiff's claim. Accordingly,

judgment shall be entered in favor of Defendants.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied and

Defendants' Motion for Summary Judgment will be granted. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.


Dated: August 28, 2013